This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37276**

**PUEBLO NORTE, LLC,**

Petitioner-Appellant,

v.

**TOWN OF TAOS and TOWN
OF TAOS TOWN COUNCIL,**

Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Jeff Foster McElroy, District Judge**

Sommer Karnes & Associates, LLP
Joseph M. Karnes
Santa Fe, NM

for Appellant

The Law Offices of Stephen C. Ross, P.C.
Stephen C. Ross
Santa Fe, NM

for Appellees

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** In this case, we review the actions of the Taos Town Council (the Council) in denying Petitioner Pueblo Norte, LLC's application for a certificate of appropriateness to demolish two buildings in the Taos Historic Overlay Zone (the Overlay Zone). Petitioner contends the Council erred when it rejected the contentions in Petitioner's appeal from the decision of the Taos Historic Preservation Commission (the Commission). We affirm.

**BACKGROUND**

**{2}** We begin with a brief summary of the proceedings below and the relevant code provisions that set out the application process at issue in this appeal. The Commission approved Petitioner's application for a certificate to construct an apartment complex within the Overlay Zone. The apartment complex was to be located behind two existing buildings in the Overlay Zone. The Commission conditioned the approval on Petitioner's agreement to "preserve" the two existing buildings by requiring Petitioner to "upgrade and maintain [the] buildings."

**{3}** Later, Petitioner applied to the Commission for a certificate to demolish the two existing buildings. The two existing buildings are considered noncontributing properties over 120 square feet. Per the Town Code of Taos, New Mexico (the Code), "noncontributing properties" are those buildings that fall within the Overlay Zone but do not otherwise fit the definition of "contributing properties." Taos, N.M., Code § 16.08.020.3 (2017). "Contributing properties" in turn are those buildings that the Commission designates as "contribut[ing] to the historic character of the Historic Overlay Zone and for which designation the written consent of the property owner has been received." *Id.*

**{4}** Under Section 16.16.220.11 (2011) of the Code, demolition of noncontributing properties that are "more than one hundred twenty (120) square feet" is "discouraged," must be approved by a certificate (i.e. the Commission's written approval), and is subject to input from the Historic Preservation Division of the New Mexico Department of Cultural Affairs (HPD):

> Demolition of a noncontributing property of more than one hundred twenty (120) square feet or a structure that is recommended as a contributing property is discouraged and must be approved with a certificate of appropriateness. Upon any application for demolition of a noncontributing property, the code administrator may notify, in writing, and provide a copy of the application, to the historic preservation division of the state of New Mexico office of cultural affairs. Comments received from the historic preservation division may be considered by the historic preservation commission in approving or denying the certificate of appropriateness application.

*Id.*

**{5}** In an adjoining provision, Section 16.16.220.12(D) (2015), the Code sets out the process regarding application for and review of a certificate. The process concludes at a final public hearing, where the Commission "shall approve, approve with modifications or conditions, deny, or suspend an application in whole or in part." Taos, N.M., Code § 16.16.220.12(D)(4). The Code then provides definitions for each of those four actions, and, as we discuss below, Petitioner relies on the definition of "approval" under this Section for its argument on appeal. *See id.*

**{6}** After Petitioner applied for a certificate to demolish the two existing buildings, HPD issued a letter recommending against demolition because it "would result in further erosion of the historic character of this primary street in downtown Taos." Additionally, HPD asked "that every option for these buildings' preservation be considered and evaluated." Following a meeting, the Commission issued a letter denying Petitioner's application for a certificate. Petitioner appealed the Commission's decision to the Council. *See* Taos, N.M., Code § 16.12.080.1(A) (2011) (outlining the procedure to appeal to the Council from a decision of the Commission).

**{7}** After a public hearing and two meetings to deliberate, the Council denied Petitioner's application and issued written findings of fact and conclusions of law outlining the bases for its decision. There, the Council pointed to several provisions of the Code that guided its decision and determined that "[t]he intent of these provisions, when taken together, is to apply rigorous standards within the [Overlay Zone] to contributing and noncontributing buildings alike, to preserve the historic character of the community, and to fulfill the other objectives stated in the . . . Code[.]"

**{8}** Petitioner then appealed the Council's decision to the district court. *See* NMSA 1978, § 39-3-1.1(C) (1999) (outlining the procedure for appeal to the district court from an administrative agency); Rule 1-074 NMRA (same). It contended that the decision whether to grant approval of its application for a certificate was governed entirely by the definition of "approval" contained in Section 16.16.220.12(D) of the Code:

> "Approval" means that the proposed work is consistent with the design guidelines and development standards contained within this section, and is compatible with the spirit and the purposes of this title. A certificate of appropriateness is granted and the project can proceed, as long as all other permits are obtained.

Taos, N.M., Code § 16.16.220.12(D)(4)(a). Petitioner argued that the language defining "approval" speaks solely to "the design of the new replacement buildings" but not to proposed demolitions where new replacement buildings are not also proposed because the definition uses the words "proposed work[.]" Therefore, because Petitioner sought only approval of its application for a certificate to demolish existing structures, but did not propose any new replacement structures, Petitioner argued that its application must be approved because there was no design for new replacement structures to evaluate.

**{9}** The district court agreed with the Council and concluded that, contrary to Petitioner's position, the Code should be "taken as a whole," and as such, the administrative body issuing certificates for the demolition of noncontributing properties "is not limited to considering whether appropriate structures would replace a demolished structure when deciding whether to approve a certificate."[1] Following the district court's decision, Petitioner requested certiorari review by this Court pursuant to Rule 12-505 NMRA, which we granted. We now turn to the merits of Petitioner's arguments.

---

1We construe the district court's dismissal of the appeal as affirming the decision of the Council.

**DISCUSSION**

**{10}**    The central issue in this case is whether the administrative body charged with issuing certificates for the demolition of noncontributing properties in the Overlay Zone is constrained to considering only the definition of "approval" set forth in Section 16.16.220.12(D)(4)(a) of the Code when deciding whether to grant or deny approval of a certificate, or whether the relevant portions of the Code, read together, may govern the administrative body's deliberations.[2] We hold that in giving effect to legislative intent and the purpose of the Code, the Council appropriately considered all relevant portions of the Code in arriving at its decision to deny Petitioner's application for a certificate.

**A.    Standard of Review**

**{11}**    In the resolution of administrative appeals, we employ "the same standard of review used by the district court while also determining whether the district court erred in its review." *Paule v. Santa Fe Cnty. Bd. of Cnty. Comm'rs*, 2005-NMSC-021, ¶ 26, 138 N.M. 82, 117 P.3d 240. Using this standard, we are limited to ascertaining only "whether the administrative agency acted fraudulently, arbitrarily or capriciously; whether the agency's decision is supported by substantial evidence; or whether the agency acted in accordance with the law." *Id.* Interpretations of statutes are questions of law that we review de novo. *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806. Accordingly, we are not constrained to statutory interpretations made by administrative agencies. *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 7, 146 N.M. 24, 206 P.3d 135. Additionally, we are likely to avoid affording deference to an administrative agency's statutory interpretations when the statutes at issue are unambiguous. *Id.*

**{12}**    The rules of construction that we apply to statutes govern our interpretation of zoning ordinances. *Smith v. Bernalillo Cnty.*, 2005-NMSC-012, ¶ 18, 137 N.M. 280, 110 P.3d 496. "When construing statutes, our guiding principle is to determine and give effect to legislative intent." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 (internal quotation marks and citation omitted). "The primary indicator of legislative intent is the plain language of the statute." *State v. Johnson*, 2009-NMSC-049, ¶ 10, 147 N.M. 177, 218 P.3d 863. Thus, our reading of the statute is guided by "the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 9, 148 N.M. 426, 237 P.3d 728 (alteration, internal quotation marks, and citation omitted).

---

2In its reply brief, Petitioner contends that the Council's written decision did not comport with the requirements of Section 39-3-1.1 and "should be vacated on this basis alone." To the extent that this argument raises issues not raised in the brief in chief and is not otherwise responsive to the answer brief, we decline to address it. *See Mitchell-Carr v. McClendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65 (stating that appellate courts need not review arguments not raised in the brief in chief unless such arguments are responsive to "new arguments or authorities presented in the answer brief" (internal quotation marks and citation omitted)); *see also* Rule 12-318(C) NMRA (stating, in pertinent part, that a reply brief "shall reply only to arguments or authorities presented in the answer brief").

We also take care to ensure our "construction [will] not lead to an injustice, absurdity or contradiction." *Atencio v. Bd. of Educ.*, 1982-NMSC-140, ¶ 13, 99 N.M. 168, 655 P.2d 1012. If it will, we construe the statute "according to its obvious spirit or reason[.]" *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 3, 117 N.M. 346, 871 P.2d 1352 (internal quotation marks and citation omitted).

**{13}** Furthermore, we are required to "read the entire statute as a whole so that each provision may be considered in relation to every other part." *N.M. Pharm. Ass'n v. State*, 1987-NMSC-054, ¶ 8, 106 N.M. 73, 738 P.2d 1318. Indeed, "all parts of a statute must be read together to ascertain legislative intent." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350. Thus, "[w]e are to read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Id.*; *see High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("[W]here several sections of a statute are involved, they must be read together so that all parts are given effect.").

## B.	The District Court Did Not Err in Concluding the Relevant Portions of the Code Must Be Read Together

**{14}** On appeal, Petitioner advances three related arguments. First, Petitioner argues that the definition of "approval" contained in Section 16.16.220.12(D)(4)(a) of the Code is the exclusive standard that governs whether to approve an application to demolish a noncontributing property. Based on that premise, Petitioner next argues that the plain language of this definition "compels" the approval of Petitioner's application. Third, Petitioner argues that the Council relinquished its ability to prohibit demolition of noncontributing properties.[3] We disagree with each of Petitioner's arguments.

**{15}** With regard to the first aspect of its argument, Petitioner contends that the Code's definition of "approval" "is the exclusive basis for determining whether to approve an application to demolish buildings on a [noncontributing] property and is controlling with respect to [Petitioner]'s application." Conversely, the Council maintains that this definition is inapplicable to Petitioner's claim and that the relevant portions of the Code must be read together to adequately effectuate the Code's aims. We agree with the Council. Petitioner's limited view is contrary to our rules of construction, which

---

[3]Petitioner also contends that the rule of ejusdem generis precluded the district court from concluding that the Council could consider other provisions of the Code, aside from the definition of "approval," in arriving at its decision to deny Petitioner's application for a certificate to demolish the existing buildings. The rule of ejusdem generis instructs "that where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned." *State v. Bybee*, 1989-NMCA-071, ¶ 9, 109 N.M. 44, 781 P.2d 316; *see also* NMSA 1978, § 12-2A-20(A)(2) (1997). This rule "may not be used to defeat the obvious purpose of legislation." *Johnson*, 2009-NMSC-049, ¶ 20 (internal quotation marks and citation omitted); *see also State v. Foulenfont*, 1995-NMCA-028, ¶ 10, 119 N.M. 788, 895 P.2d 1329. Petitioner's argument is centered on a single provision, "approval," that contains no enumerated list of specific terms. Moreover, as established herein, the Code contains a clearly stated purpose that the rule of ejusdem generis may not be employed to undermine. We therefore conclude that Petitioner's argument on this point lacks merit and offer no further analysis in this regard.

require that "we read several sections of a statute together, so that all parts are given effect." *Harris v. Vazquez*, 2012-NMCA-110, ¶ 10, 288 P.3d 924. Additionally, Petitioner's argument misapprehends the central, controlling provisions of the Code and essentially asks us to hold that a single provision of the Code controls the question before us. Petitioner's proposal would require us to both ignore controlling provisions in the Code and read additional language into Section 16.16.220.12(D)(4). As we explain, we cannot do either.

**{16}** The Code must "be read in a way that facilitates [its] operation and the achievement of [its] goals." *Miller v. N.M. Dep't of Transp.*, 1987-NMSC-081, ¶ 8, 106 N.M. 253, 741 P.2d 1374. The Code contains a clearly stated purpose that governs its application to the Overlay Zone:

> The Town intends to protect, preserve, and perpetuate areas of historical, cultural, architectural, artistic or geographical significance located within the Town of Taos. The Town finds it desirable to protect and enhance the Town's economic base by attracting tourists, visitors and residents; to stabilize and improve property values; to foster civic pride by protecting the Town's unique cultural heritage by prohibiting the unnecessary destruction and defacement of its cultural assets; to preserve historic architectural design and integrity; and to ensure the harmonious, architecturally sympathetic, orderly and efficient growth and development of the Town.

Taos, N.M., Code § 16.16.220.1 (1999). The Council relied on this provision in reaching its decision and concluded that this purpose statement demanded that it look to the Code as a whole in reaching a decision on Petitioner's application. In fact, the Council noted that its decision was guided by the Code's "strong preservation goal" and that even properties designated as noncontributing are subject to that goal and treated accordingly. Other sections of the Code also address the spirit or overall goal of the Code, that being preservation. *See* Taos, N.M., Code § 16.16.220.11 (stating that the demolition of noncontributing properties is "discouraged" and must be approved by certificate); Taos, N.M., Code § 16.16.220.12 (stating that the purpose of the certificate application process is "to encourage preservation and enhancement of historic Taos").

**{17}** Additionally, as noted earlier, the Code contains an express provision for the "demolition" of contributing and noncontributing properties, which requires an applicant to seek a certificate and clearly contemplates that the Commission may approve or deny the application. *See* Taos, N.M., Code § 16.16.220.11 (stating that "[c]omments received from [HPD] may be considered by the . . . [C]ommission in approving *or denying* the certificate of appropriateness application" (emphasis added)). Similarly, while Petitioner relies on the definition of "approval" in Section 16.16.220.12(D)(4)(a), it fails to acknowledge that this section also contains a definition for "denial" of certificates, and that both of these definitions serve to define express language in the section stating that the Commission "shall approve, approve with modifications or conditions, deny, *or* suspend" an application. Taos, N.M., Code § 16.16.220.12(D)(4) (emphasis added).

Petitioner points to no portion of the Code or any other authority for its contention that the definition of "approval" is the sole provision that governs the decision whether to grant approval of its application for a certificate, and our review of the Code likewise reveals no such support. *See Roselli v. Rio Cmtys. Serv. Station, Inc.*, 1990-NMSC-018, ¶ 10, 109 N.M. 509, 787 P.2d 428 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority." (internal quotation marks and citation omitted)). Likewise, Petitioner offers no reason why the definition of "denial" and the provision for "demolition," which speak precisely to the action for which Petitioner sought a certificate and for which such certificate was denied, should not also have governed the Council's decision. In the absence of such a reason, given that the denial of Petitioner's application for a certificate for demolition is at issue here, we see no basis on which to conclude that the definition of "approval" should be the sole provision given consideration in deciding whether to grant or deny an application for a certificate for demolition, while "denial" and "demolition" are to be given no consideration at all. *Cf. Faubion v. Tucker*, 1954-NMSC-047, ¶ 4, 58 N.M. 303, 270 P.2d 713 (declining to consider a claim of error where "[the d]efendant offer[ed] no reason for or argument in support of his claim" aside from the existence of a statute).

**{18}** In support of Petitioner's argument that the definition of "approval" provides the exclusive standard for determining whether to approve its application for a certificate, Petitioner asserts only that the use of the words "proposed work" within the definition of "approval" unequivocally refers solely to the designs of replacement structures. *See* Taos, N.M., Code § 16.16.220.12(D)(4)(a) (" 'Approval' means that the proposed work is consistent with the design guidelines and development standards contained within this section, and is compatible with the spirit and the purposes of this title."). We see no support for this narrow view based on our review of the Code. However, because we have already concluded that the Code's definition of "approval" is not the exclusive provision that controls the decision to grant or deny approval of certificates for demolition, we do not address this specific contention any further. *See Crist v. Town of Gallup*, 1947-NMSC-012, ¶ 14, 51 N.M. 286, 183 P.2d 156 (stating that appellate courts need not address questions unnecessary for the resolution of the case), *superseded by statute on other grounds as stated in Hoover v. City of Albuquerque*, 1954-NMSC-043, ¶ 5, 58 N.M. 250, 270 P.2d 386.

**{19}** Next, Petitioner argues that the definition of "approval" as contained in the Code "compels" the granting of approval of its application for a certificate to demolish existing structures because Petitioner had no plans to build replacement buildings on the property. Our reading of this provision of the Code does not support this result. To begin, nowhere does the language of the provision at issue expressly limit its reach to proposed work for new or replacement buildings, nor does it compel the granting of approval of a certificate for demolition when no design for replacement buildings is at issue. We will not read language into the Code that does not exist, especially if it makes sense as written. *See Harris*, 2012-NMCA-110, ¶ 10. Accordingly, we conclude, as did the district court, that this argument is without merit.

**{20}** Finally, Petitioner urges us to conclude that the Council relinquished its ability to prohibit demolition of noncontributing properties. Petitioner argues that because the owner of a property within the Overlay Zone must consent to their property being designated as contributing and thus subject to the provisions of the Code, it follows that noncontributing properties do not fall within the Code's regulatory reach. *See* Taos, N.M., Code § 16.08.020.3. This proposition is not supported by the Code. Again, no provision of the Code limits its reach solely to contributing properties. In fact, to the contrary, the Code contains a section dedicated to the "standards for noncontributing properties." Taos, N.M., Code § 16.16.220.8 (2015). And, as noted above, the Code expressly discourages the demolition of noncontributing properties and subjects proposed demolitions to input from HPD, which, in this case, recommended against demolition, and requires written permission from the Commission before demolition can occur. *See* Taos, N.M., Code § 16.16.220.11.

**{21}** For all these reasons, we conclude that the district court did not err in determining that the relevant portions of the Code, read together, govern the process for deciding whether an application for approval should be granted or denied.

**CONCLUSION**

**{22}** For the foregoing reasons, we affirm.

**{23} IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**